UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CEDRIC JAMES SIMPSON,

           Plaintiff,

v.

RANDEE REWERTS,
DARYL HOFFMAN, and
UNKNOWN PARTY,

           Defendants.

                                      /

Case No. 1:24-cv-1232

Hon. Robert J. Jonker


**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action by plaintiff Cedric James Simpson, a prisoner in the custody of the Michigan Department of Corrections (MDOC). Plaintiff brought this lawsuit pursuant to 42 U.S.C. § 1983 against three MDOC employees at the Carson City Correctional Facility (DRF): Warden Randee Rewerts; Prison Counsel (PC) Daryl Hoffman; and an Unknown Party ("Records Officer"). Defendants have identified the unknown party as Records Office Supervisor (ROS) Colleen Byrnes. *See* Defendants' Brief (ECF No. 13, PageID.43). Plaintiff contends that defendants delayed his release from prison after a state court judge vacated his conviction and sentence. This matter is now before the Court on defendants' motion for summary judgment on the issue of exhaustion (ECF No. 12). Plaintiff did not file a response to this motion.[1] However, plaintiff later filed three related motions: a motion to deny or stay defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56(d) (ECF No. 19); a motion to extend

---

[1] In this regard, the Court denied plaintiff's unsigned motion for a "250-day extension of time" to respond to defendants' motion. *See* Order (ECF No. 17).

discovery (ECF No. 30); and a motion to amend the complaint as a matter of course pursuant to Fed. R. Civ. P. 15(a)(1)(A) (ECF No. 34).

## I.    Background

On November 10, 2022, Macomb County Circuit Judge Jennifer Faunce entered an order which vacated plaintiff's "23 to 60 months prison sentence for surveilling an unclothed person and order his release from the Michigan Department of Corrections." Compl. (ECF No. 1, PageID.3). *See* Order Granting Withdraw of Plea and Vacating Conviction/Sentence) (Nov. 10. 2022) (ECF No. 1-1).  On that same day, plaintiff gave a copy of the order to PC Hoffman.  Compl. at PageID.3.

> Despite the clear court order releasing Plaintiff Simpson from M.D.O.C. custody, Defendant Hoffman refused to process or notify the Warden that plaintiff Simpson's conviction and sentence had been vacated and that the M.D.O.C. had to release him from custody.

*Id*.  Hoffman told plaintiff, "there is nothing I am going to do." *Id*.

On November 11, 2022, plaintiff sent a kite to ROS Byrnes informing her that "Plaintiff Simpson's conviction and sentence had been vacated and he needed to be release [sic] from M.D.O.C. custody immediately." *Id*.  Plaintiff did not receive a response. *Id*.

On November 14, 2022, plaintiff wrote a kite to Warden Rewerts "informing him that his conviction and sentence had been vacated and the Plaintiff Simpson needed to be release [sic] from M.D.O.C. custody." PageID.4.  Plaintiff did not receive a response. *Id*.

On November 15, 2022, plaintiff "got into a heated argument" with PC Hoffman and "demanded to be release [sic] from M.D.O.C. custody based on the court order vacating his conviction and sentence." *Id*.  Hoffman refused to process or investigate plaintiff's claims. *Id*.

On November 16, 2022,

> Plaintiff Simpson's sister Darlene Johnson called defendant Warden Randee Rewerts office informing him that Plaintiff Simpson's conviction and sentence had been vacated and that he needed to be release [sic] from M.D.O.C. custody. Defendant Rewerts [sic] response to her was "there is nothing we can do about it."

*Id*.

On November 17, 2022, Judge Faunce's office informed DRF officials that plaintiff's conviction and sentence had been overturned and that plaintiff needed to be released from MDOC custody. *Id*. That same day, PC Hoffman processed plaintiff's release from MDOC custody. PageID.5.

Plaintiff alleged that he was illegally held in MDOC custody for seven days after his conviction and sentenced had been vacated by Judge Faunce in violation of his Eighth and Fourteenth Amendment rights. *Id*. For his relief, plaintiff seeks monetary damages against defendants. PageID.6.

## II.    Plaintiff's motions

As discussed, plaintiff did not respond to defendants' motion for summary judgment. However, plaintiff filed three motions, each of which has the potential to delay the Court's adjudication of defendants' motion.

### A.    Motion to deny or stay defendants' motion

Plaintiff filed a motion to deny or stay defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56(d) (ECF No. 19). Rule 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). As the Sixth Circuit explained,

> The purpose behind Rule 56(d) is to ensure that plaintiffs receive " 'a full opportunity to conduct discovery' to be able to successfully defeat a motion for summary judgment." *Ball v. Union Carbide Corp.*, 385 F.3d 713, 719 (6th Cir. 2004) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "A party invoking [the] protections [of Rule 56(d)] must do so in good faith by affirmatively demonstrating . . . how postponement of a ruling on the motion will enable him . . . to rebut the movant's showing of the absence of a genuine issue of fact." *E.M.A Nationwide, Inc.*, 767 F.3d at 623 (quoting *Willmar Poultry Co. v. Morton-Norwich Prods., Inc.*, 520 F.2d 289, 297 (8th Cir. 1975)). The affidavit must "indicate to the district court [the party's] need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information." *Ball*, 385 F.3d at 720 (quoting *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000)).

*Doe v. City of Memphis*, 928 F.3d 481, 490 (6th Cir. 2019).

As an initial matter, plaintiff's Fed. R. Civ. P. 56(d) is untimely.  Defendants filed their motion for summary judgment on June 20, 2025.  However, plaintiff did not file his Rule 56(d) motion within the 28-day response period for this motion.  *See* W.D. Mich. LCivR 7.2(c). Rather, plaintiff waited about almost five months, filing his Rule 56(d) motion on or about November 10, 2025.[2]  Plaintiff's motion should be denied that reason.

Next, plaintiff failed to meet his burden under Rule 56(d).  Defendants seek summary judgment on the preliminary issue of exhaustion of administrative remedies.  As discussed, *infra.*, MDOC prisoners exhaust their administrative remedy by filing a grievance form, a Step II Appeal and a Step III Appeal, all of which appear in an administrative record.  In short, plaintiff knows whether he filed and appealed grievances against defendants. Plaintiff has not

---

[2] The Court notes that under the prison mailbox rule, a prisoner's court papers are deemed filed at the time he "delivered it to the prison authorities for forwarding to the court clerk." *Houston v. Lack*, 487 U.S. 266, 276 (1988). "Under this relaxed filing standard, a pro se prisoner's complaint is deemed filed when it is handed over to prison officials for mailing to the court. Cases expand the understanding of this handing-over rule with an assumption that, absent contrary evidence, a prisoner does so on the date he or she signed the complaint." *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (internal citations omitted).  Based on the prison mailbox rule, plaintiff's motion was filed on November 10, 2024, the date he signed it.  PageID.96.  This being said, the Court notes that plaintiff's proof of service is dated November 10, 2024, but motion was not postmarked until November 24, 2025.  PageID.98, 102.  The Court rarely sees this type of discrepancy between a prisoner proof of service and a postmark. The court mentions this discrepancy because plaintiff previously filed a false declaration and proof of service in this case.  *See* Order (ECF No. 18, PageID.78).

4

identified any exhaustion-related matters which require discovery.  While plaintiff filed an affidavit stating his intent to engage in discovery, he did not explain any particular discovery which he needed to respond to defendants' motion.  *See* Affidavit (ECF No. 22).[3]  To the extent that plaintiff submitted discovery, he did not serve initial discovery until November 19, 2025, after he filed the Rule 56(d) motion.  *See* Proof of Service (First request for production of documents) (ECF No. 24).  Plaintiff followed this up with additional proofs of service for: a Request for admission (Dec. 1, 2025) (ECF No. 27), a Request for Interrogatories (Dec. 7, 2025) (ECF No. 28), and a re-filing of his First request for production of documents (Nov. 19, 2025) (ECF No. 29).  Finally, plaintiff has not demonstrated to the Court why he needs discovery on the exhaustion issue, what material facts he hopes to uncover, and why he has not previously discovered the information.  *See Doe*, 928 F.3d at  490.  Accordingly, plaintiff's Rule 56(d) motion to deny or stay the motion for summary judgment should be denied.

### B.        Motion for extension of time to complete discovery

In a related motion, plaintiff seeks an extension of time to complete discovery (ECF No. 30).  As discussed in § II.A., *supra*, plaintiff has not demonstrated that he needs any particular discovery with respect to exhaustion.  If plaintiff's case survives defendants' motion for summary judgment on the basis of exhaustion, then the Court will enter an amended case management order with new pre-trial deadlines.  Accordingly, this motion for extension of time should be denied.

---

[3] This hybrid document contains a purported declaration under 28 U.S.C. § 1746.  However, the declaration does not comply with the statute, *i.e.*, it does not state that the facts are "true and correct".  Rather, plaintiff states that the information "is true to the best of my Information, knowledge, and belief."  PageID.108.  However, the document appears to be an affidavit.

### C.    Motion to amend

Finally, plaintiff recently filed a motion to amend the complaint as a matter of course pursuant to Fed. R. Civ. P. 15(a)(1)(A) (ECF No. 34).  Plaintiff's motion is dated January 13, 2026 (PageID.34), more than six months after defendants filed their motion for summary judgment.  The proposed amended complaint essentially re-states the claims alleged in the original complaint (ECF No. 34-1).  In *Young v. Artis*, No. 1:22-cv-340, 2023 WL 4494402 (June 14, 2023), *R&R adopted*, 2023 WL 4494404 (W.D. Mich. July 10, 2023), this Court struck a similarly filed motion to amend "as a matter of course" stating:

> After failing to file a substantive response to defendants' motion for summary judgment, [prisoner] Young filed an Amended Complaint which alleged the same incident and claims. . . .
>
> The amended complaint is not properly before the Court and should be stricken. There is no basis for plaintiff filing an amendment as a matter of course, because the amended complaint was not filed "21 days after serving it" (Fed. R. Civ. P. 15(a)(1)(A), "21 days after service of a responsive pleading" (Fed. R. Civ. P. 15(a)(1)(B), or "21 days after service of a motion under Rule 12(b), (e), or (f)" (Fed. R. Civ. P. 15(a)(1)(B). Furthermore, the case management order (CMO) provides that, "Motions to join parties or to amend the pleadings must be filed within 45 days of the date of this Order."

*Young*, 2023 WL 4494402 at *3.  For these same reasons, plaintiff's motion to amend as a matter should be denied.

### III.    Summary Judgment

### A.    Legal standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d  at 478-79 (citations omitted).  "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."  *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

Here, plaintiff did not a responsive brief as required by W.D. Mich. LCivR 7.2(c) which requires that "any party opposing a dispositive motion shall, within twenty-eight (28) days after service of the motion, file a responsive brief and any supporting materials". "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).  The trial court is required to "intelligently and carefully review the legitimacy of such unresponded-to motion" and cannot "blithely accept the conclusions argued in the motion." *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 407 (6th Cir. 1992).  However, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the

trial court must conduct its own probing investigation of the record" to demonstrate the existence of genuine issues of material fact.  *Id.* at 405.

### B.    Lack of Exhaustion

### 1.    Exhaustion requirement

The Prison Litigation Reform Act (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies.  *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001).  A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741.  One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court.  This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007).  In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules.  *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'"  *Jones*, 549 U.S. at 218.

### 2.    MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* MDOC Policy Directive ("PD") 03.02.130 (effective March 18, 2019). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control.  *Id.* at ¶ Q.  If

the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff.  *Id.* at ¶¶ Q and S.  The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely.  Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ S (emphasis in original).  The prisoner must send the Step I grievance to the appropriate grievance coordinator.  *Id.* at ¶ W.  If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator.  *Id.* at ¶ DD.  Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section.  *Id.* at ¶ HH.

### C.    Discussion

There is no evidence that plaintiff exhausted any grievances against defendants before filing this complaint.  *See* Plaintiff's MDOC Prisoner Step III Grievance Report (covering the time period of January 1, 2019 through March 5, 2025) (ECF No. 13-3).  Based on this record, plaintiff did not properly exhaust a grievance to support his claims against any of the MDOC Defendants.  *Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93.  Accordingly, defendants' motion for summary judgment should be granted.[4]

---

[4]  In reaching this determination, plaintiff alleged that he was released from MDOC custody in November 2022.  *See* Compl. at PageID.5.  Assuming that plaintiff was released in 2022, he did not pursue this claim as a former prisoner. Rather, plaintiff waited to file this lawsuit until November 2024, at which time he was a prisoner at the MDOC's Charles E. Egeler Reception and Guidance Center.  *Id*. at PageID.2.  As this Court stated in *Hicks v. Haynie*, No. 1:19-cv-6, 2020 WL 8474737 at *4 (Dec. 21, 2020), *R&R adopted*, 2021 WL 62083 (W.D. Mich. Jan. 7, 2021) ("Because Plaintiff was incarcerated when he filed his complaint, in accordance with the PLRA, he was subject to the MDOC's exhaustion requirements.").

**III.    Recommendation**

For these reasons, I respectfully recommend that plaintiff's motion to deny or stay defendants' motion for summary judgment (ECF No. 19), motion for extension of time to complete discovery (ECF No. 30), and motion to amend the complaint (ECF No. 34) be **DENIED**.

I further recommend that defendants' motion for summary judgment (ECF No. 12) be **GRANTED** and that the lawsuit be **terminated**.

Dated: January 28, 2026                                   /s/ Ray Kent
                                                          RAY KENT
                                                          United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).